UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | |
| - v. - | : | 11 Cr. 292 (RJS) |
| | : | |
| BALU KAMAT, | : | |
| | : | |
| Defendant. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S SENTENCING MEMORANDUM

PREET BHARARA
United States Attorney for the Southern
District of New York

RICHARD C. TARLOWE
MICHAEL S. BOSWORTH
Assistant United States Attorneys

    - Of Counsel -

The Government respectfully submits this memorandum in connection with the sentencing of Balu Kamat, which is scheduled for November 7, 2011 at 11:00 a.m.  Kamat pleaded guilty to one count of mail fraud, in violation of Title 18, United States Code, Section 1341.  As described more fully below, as well as in the Presentence Investigation Report ("PSR"), Kamat took part in a scheme to defraud the Metropolitan Transit Authority ("MTA") in connection with a federally-funded MTA construction project.  Kamat and his co-defendant, Carmine Desio, helped create and maintain the false impression that their company, Environmental Energy Associates, or EEA, was in compliance with certain requirements for Disadvantaged Business Enterprises ("DBEs") in order to enable the general contractor on the project to receive "credit" from the MTA for utilizing the services of a DBE when, in fact, the general contractor should not have received such credit.

I.      **Desio's Criminal Conduct**

      A.      <u>**The DBE Regulations**</u>

In or about 1980, the United States Department of Transportation ("USDOT") issued regulations in connection with a program to increase the participation of minority and disadvantaged businesses in federally-funded public construction contracts.  Pursuant to those regulations, recipients of USDOT construction grants are required to establish a DBE program that, among other things, (1) establishes goals for the percentage of a construction project's work that should be awarded to DBEs ("DBE goals"); and (2) requires general contractors on construction projects to make good faith efforts to meet the relevant DBE goals.

General contractors are only permitted to count toward the attainment of their DBE goals those funds that are paid to DBEs that perform a "commercially useful function" in the execution of a contract.  Under the relevant rules and regulations, a DBE subcontractor performs a

commercially useful function only where it: (a) is responsible for the execution of the work of the contract; (b) carries out its responsibilities by actually performing, managing, and supervising the work involved; and (c) furnishes the supervision, labor, and equipment necessary to perform its work.  The rules also expressly provide that a DBE does not perform a commercially useful function "if its role is limited to that of an extra participant in a transaction, contract, or project through which funds are passed in order to obtain the appearance of DBE participation."

### B.   EEA's Subcontract on the Dey Street Concourse Project

In or about 2004, the MTA began work on a federally-funded construction project to develop a new transportation hub, known as the Fulton Street Transit Center, to improve access to and connections among various subway lines in lower Manhattan.  Part of that project included the creation and construction of a new underground passageway at Dey Street that would enable passengers on the "R" and "W" subway lines to transfer to the "4" and "5" lines, and vice versa (the "Dey Street Concourse Project").

Following a competitive bidding process, the MTA awarded the Dey Street Concourse Project to a construction company that served as the general contractor ("Contractor-1") and established a 10% DBE goal, meaning that Contractor-1 was obligated to make good faith efforts to enter into subcontracts with DBEs, the total value of which would equal 10% of the overall contract.  To that end, Contractor-1 entered into subcontracts with a number of DBEs, including EEA.  The subcontract with EEA provided that EEA was to perform certain demolition work on the Dey Street Concourse Project.

C.      **The Scheme to Defraud the MTA In Connection with the Dey Street Concourse Project**

From the outset, Contractor-1 intended to, and subsequently did, claim DBE credit for the demolition work that EEA performed on the Dey Street Concourse Project.  Because Contractor-1 was only permitted to do so if EEA was in full compliance with the DBE requirements, Kamat and Desio took various steps, along with others, including employees of Contractor-1, to create and maintain the false appearance that EEA was in compliance with those requirements, including the requirement that the DBE utilize and supervise its own employees.

In reality, the work that EEA had contracted with Contractor-1 to perform on the Dey Street Concourse Project was principally performed by, and under the supervision of, Contractor-1's workers.  Because that fact (among others) would have jeopardized the DBE credits that Contractor-1 was claiming in connection with EEA's demolition work, Desio and Kamat undertook to conceal that fact from the MTA and to create instead the false impression that EEA employees were performing the work.

Thus, a number of Contractor-1's workers, including three of the company's longstanding foremen, were shifted from Contractor-1's payroll to an EEA payroll, and during the course of the project, those workers received checks from EEA instead of from Contractor-1.  In addition, the crew that had previously worked with one of those foremen on Contractor-1's other projects was shifted to the EEA payroll as well.  Although the longstanding foremen for Contractor-1 were temporarily shifted to an EEA payroll, and began receiving paychecks from EEA, they continued to receive bonus payments from Contractor-1 and, in some cases, they also continued to receive vehicles and/or transportation subsidies from Contractor-1.  The time sheets for the EEA "employees" were kept not by Kamat or Desio, but by an employee of Contractor-1.  And after

3

being recorded and compiled by the Contractor-1 employee, that information was then faxed to Kamat and/or Desio so that they, in turn, could prepare EEA paychecks for those workers.  By doing so, Kamat and Desio helped maintain the false appearance that the Contractor-1 workers who were performing the work were EEA employees.

Furthermore, on a monthly basis, Kamat and/or Desio submitted records, including certified payroll records, to Contractor-1 reflecting the work that EEA "employees" were performing, knowing that, on the basis of those records, Contractor-1 would submit monthly reports to the MTA reflecting EEA's DBE progress.  On the forms submitted by Contractor-1 to the MTA, Contractor-1 certified, among other things, that none of the DBE subcontractors utilized employees or former employees of Contractor-1 within the previous month, when, in fact, EEA had not only utilized former employees of Contractor-1 but, in certain months, utilized employees of Contractor-1 who had worked for Contractor-1 at the beginning of that same month.

Similarly, in September 2009, Kamat and Desio submitted to the MTA an MTA payment verification form falsely certifying that EEA had not utilized employees or former employees of Contractor-1 on the Dey Street Concourse Project.  On or about September 17, 2009, that form was mailed to the MTA's office in Manhattan.  That form serves as the predicate mailing for the wire fraud charge to which Desio and Kamat have pled guilty.

**II.     Discussion**

The defendant's sentencing submission is devoted primarily to providing a greater description of his personal history, including through letters of support from family, friends and others.  The Government has no reason to doubt that description of the defendant or the sincerity of the letters submitted on his behalf.  Of course, the Court should – and, indeed, must – consider the defendant's history and characteristics in fashioning an appropriate sentence.  At the same time, however, the Court must also consider, and balance those against, the defendant's criminal conduct.  In light of that conduct, the Government submits that a sentence within the advisory Guidelines range of 15-21 months' imprisonment would be appropriate in this case.

        **A.     <u>The Guidelines Sentencing Range</u>**

No dispute exists as to the calculation of the Sentencing Guidelines, or the applicable advisory Guidelines range.  As set forth in the PSR, the offense level is 14 and the defendant has no criminal history points, resulting in an advisory Guidelines range of 15 to 21 months' imprisonment.

        **B.     <u>A Sentence Within the Guidelines Range Is Appropriate</u>**

Kamat played an important role in a scheme to defraud the MTA by helping to create and maintain the false appearance that EEA was complying with the DBE rules in connection with its work on the Dey Street Concourse Project, thereby permitting Contractor-1 improperly to claim DBE credits for that work.  Kamat and Desio took a variety of steps to carry out that scheme, some of which they had to repeat multiple times throughout the multi-year project.  For example, they repeatedly issued EEA checks to employees who had been shifted to an EEA payroll from Contractor-1's payroll, and they repeatedly submitted, typically on a monthly basis, certified

payrolls that identified those employees as EEA employees.

Although the primary beneficiary of this deception was Contractor-1, as Contractor-1 was able to claim DBE credit that it otherwise would not be entitled to, the defendants also benefitted personally from this conduct.  Specifically, Kamat and Desio personally received a total of approximately $188,000 as a result of the fraudulent scheme.  Moreover, by engaging in this conduct, the defendants helped Contractor-1 subvert the goals of the DBE program, diverting funds from DBEs that were in compliance with the regulations and depriving those DBEs of the opportunity to perform the work that EEA was hired to perform.

Dated:  New York, New York
        November 2, 2011

                          Respectfully submitted,

                          PREET BHARARA
                          United States Attorney
                          Southern District of New York


                  By:_____/s/_____
                          Richard C. Tarlowe
                          Michael S. Bosworth
                          Assistant United States Attorneys
                          (212) 637-2330 / 1079